# Richmond.

CONSUMERS' BREWING COMPANY v. DOYLE'S ADMINISTRATRIX.

FEBRUARY 4, 1904.

Absent, Cardwell, J.

1. NEGLIGENCE—*Burden of Proof.*—In an action to recover for a negligent injury the burden is on the plaintiff to establish the negligence of the defendant by affirmative evidence which shows more than a mere probability of a negligent act. The proof need not be direct and positive by an eye-witness, but it must be such as to satisfy reasonable and well-balanced minds that it resulted from the negligence of the defendant. If the injury resulted from one or the other of two causes, for only one of which the defendant is responsible, or if it is just as probable that it was caused by the one as the other, in either event the plaintiff must fail.

2. NEGLIGENCE—*Concurrent Negligence of Parties.*—If the continuing negligence of a plaintiff up to the time of the injury concurs with the negligence of the defendant in causing the injury the plaintiff cannot recover.

3. DAMAGES—*Negligence—Accident.*—A defendant is not liable for damages resulting from an event which was not expected, and could not have been anticipated by a person of ordinary prudence.

Error to judgment of the Law and Equity Court of the city of Norfolk, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*White, Tunstall & Thom, P. H. & H. C. Cabell* and *G. M. Dillard,* for the plaintiff in error.

*Thomas H. Willcox* and *Hubard & Hubard,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the administratrix of Charles H. Doyle to recover from the Consumers' Brewing Company damages for the alleged negligent killing of the plaintiff's intestate by the servants of the defendant company.

It appears that the Brewing Company employed the firm of Dalby & Butler to paint its building, and to paint its name across the front of said building. This firm employed the plaintiff's intestate, Charles H. Doyle, to paint the sign, which was about fifteen feet from the ground. A swinging stage was erected by these painters, from which the lettering was to be done. This stage was supported by ropes fastened to the top of the building, and during the progress of the work these ropes were allowed to hang from the ends of the stage to the ground below; the northern rope being coiled on the ground near the large front door of the building, and the southern rope fastened around a knob that came out of the building near a small south door.

While Doyle was on this stage engaged in painting the sign, the wagons of the Brewing Company were constantly driving up to the large front door of the building, which was under the stage, for the purpose of loading and unloading boxes or crates, and beer. In the afternoon of the day, while Doyle was upon the stage, a covered wagon of the defendant company drove up to the building to unload beer crates. This consumed about twenty-five minutes, when the driver came out of the building and got upon the wagon, and started immediately for the stable. In some way, not explained, the rope which lay coiled upon the ground near the large door, became, or had already become, entangled in one of the wheels, and, as the wagon moved off, the stage received a jerk, causing Doyle to fall to the ground,

producing injuries from the effects of which he died several days thereafter.

The essential grievance stated in the declaration is that the defendant company, regardless of its duty in the premises, had so negligently and carelessly governed, controlled, managed and driven its wagon and horses, that the same had become entangled with the rope attached to the staging, and had torn the same from the roof where it was securely fastened, thereby throwing Doyle violently to the ground, and causing the injury complained of.

The jury found a verdict for the plaintiff, and assessed the damages at $6,500.00, which was distributed by the verdict in equal proportions to the widow and children of the deceased.

A motion for a new trial was made upon the ground that the verdict was contrary to the law and the evidence, and for other reasons; but the court overruled the motion, and gave judgment for the plaintiff, to be distributed as directed by the verdict, and the defendant excepted.

We are of opinion that in no aspect of the case, under the evidence adduced, was the plaintiff entitled to recover, and in this view it is unnecessary to consider any other assignment of error than the refusal of the court to set the verdict aside as contrary to the law and the evidence.

It is an established fact that the coming and going of the wagons of the defendant up to and from the door, over which the deceased was at work, was well known to him and to the firm of painters by whom he was employed. It is further established, indeed it is not contradicted, that when the wagon in question drove up to the door, it assumed a position of absolute safety so far as the deceased was concerned. Doyle himself says that he looked, and the ropes were hanging two and one-half or three feet from the wheels of the wagon, and that he went on with his work and paid no further attention to the wagon. It further appears that the wagon remained unmoved in this safe position for about twenty-five minutes, when the

driver came out and started for the stable, the horse moving off as he was stepping to his seat. The last seen of the ropes by either Doyle or the driver was when the wagon was left standing with the ropes two and one-half or three feet from it. There is no evidence which shows how or when the rope became entangled with the wheel of the wagon, nor is there any evidence from which any satisfactory or reliable inference can be drawn, to show with any certainty when, how, or by whose instrumentality the rope and the wagon, which were from two to three feet apart, became entangled with each other. The evidence leaves this important question in the region of the barest conjecture. Whether the rope became entangled with the wagon while the driver was in the building, or after he mounted the wagon and started off, or by his driving against the rope, or whether the contact was the result of the stage, upon which Doyle was working, shaking or moving the rope so as to bring it and the wagon together, is not revealed by the evidence. Any one of these conjectures is as consistent with the testimony as the other. Indeed, other theories might be suggested in explanation of the accident, but in such cases we are not permitted to indulge in conjecture or speculation. The burden is upon the plaintiff to make out her case, which is, in the first instance, to establish the negligence of the defendant by affirmative evidence, which must show more than a probability of a negligent act. The proof need not be direct and positive, by some one who witnessed the occurrence and saw how it happened, but it must be such as to satisfy reasonable and well-balanced minds that it resulted from the negligence of the defendant. *Southern Ry. Co.* v. *Hall, ante,* p. 135, 45 S. E. 867; *N. & W. Ry. Co.* v. *Poole's Adm'r,* 100 Va. 148, 40 S. E. 627.

In the case last cited, Judge Buchanan says: "When damages are claimed for injuries which may have resulted from one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must

fail if his evidence does not show that the damage was produced by the former cause. And he must also fail if it is just as probable that the damages were caused by the one as by the other, since the plaintiff is bound to make out his case by the preponderance of evidence." If, however, it appeared that the defendant's driver was guilty of negligence, as alleged, and, as contended, guilty of negligence in not looking, when he came out of the builing, to see if the rope was in or near the wheel, the plaintiff would not be entitled to recover, because of the continuing and concurrent negligence of the deceased. Doyle was in full view of the wagon and horse from the time it stopped until the moment of the accident, and it was certainly as incumbent upon him to be on the alert to protect himself, as it was obligatory upon the driver to be on the lookout for his protection. If the driver was negligent in not seeing the danger to which Doyle was exposed before starting the wagon, it was equally negligent in Doyle not to have seen and guarded against such danger. If the driver was negligent in handling the reins and starting the horse, Doyle was equally negligent in handling the rope which was under his control. There is no testimony suggesting negligence on the part of the driver that does not convict Doyle of an equal or greater degree of negligence. One had no better opportunity to anticipate the accident, nor any better means of preventing it than the other. If, therefore, there was negligence, it was concurring negligence, continuous and mutual up to the instant of the accident, which disentitles the plaintiff to recover. *Richmond Traction Co.* v. *Martin's Admx., ante,* p. 205, 45 S. E. 886.

There was nothing in the situation to suggest danger to either party from the time the wagon stopped until it started away. Doyle says that he regarded the situation as a safe one, and paid no further attention to the wagon after it stopped. If the accident had been anticipated, it could have been easily avoided by either party. On Doyle's part, by drawing the rope up to a place

of safety above the wagon, and on the driver's part by examining to see that the rope had not come in contact with the wagon during his absence. Neither, however, anticipated trouble, and, therefore, neither took precautions to avoid it. The true view of the case presented by the record is that the injury complained of was the result of an accident which was not expected, and could not have been anticipated by a person of ordinary prudence. The fact, as shown in the outset, that it is a matter of pure speculation how or when the rope became entangled with the wagon wheel greatly strengthens the view that the case must be referred to the region of pure accident. It would violate every principle of justice or law if the defendant were compelled to foresee and provide against that which reasonable and prudent men would not expect to happen. *Persinger's Admx.* v. *Alleghany Ore & Iron Co., ante,* p. 350, 46 S. E. 325.

For these reasons, we are of opinion that the lower court erred in overruling the motion of the defendant to set aside the verdict, and its judgment must, therefore, be reversed and the case remanded for a new trial.

*Reversed.*